HOLLAND, Justice,
for the Majority:
Caris Life Sciences, Inc. (“Caris”) was a privately held Delaware corporation. Through subsidiaries, it operated three business units: Caris Diagnostics, Target-Now, and Carisome. Caris Diagnostics was consistently profitable. TargetNow generated revenue but not profits. Cari-some was in the developmental stage.
To achieve the dual goals of securing financing for TargetNow and Carisome and generating a return for its stockholders, Caris sold Caris Diagnostics to Miraca Holdings, Inc. (“Miraca”). To minimize taxes, the transaction was structured using a spin/merge structure (the “Miraca Transaction”). Caris first transferred ownership of TargetNow and Carisome to a new subsidiary, then spun off that subsidiary to its stockholders (the “Spinoff’). At that point, owning only Caris Diagnostics, Caris merged with a wholly owned subsidiary of Miraca (the “Merger”).
David Halbert (“Halbert”), the founder of Caris, owned 70.4% of its fully diluted equity. JH Whitney VI, L.P. (“Fund VI”), a private equity fund, owned another 26.7%. Halbert and Fund VI received a proportionate equity stake in the spun-off entity (“SpinCo”), which kept them whole *1039 for purposes of their pre-transaction beneficial ownership of TargetNow and Cari-some. In the Merger, Miraca paid $725 million for what was left of Caris (“Re-mainCo.”)- Each share of RemainCo. stock was converted into the right to receive $4.46 in cash. Halbert and Fund VI received their share of the cash, representing the value of their pre-transaction beneficial interest Caris Diagnostics. Through the Miraca Transaction, Halbert and Fund VI received total proceeds of approximately $560 million. They financed SpinCo by reinvesting $100 million.
Most of the remaining approximately 2.9% of Caris’s fully diluted entity took the form of stock options that were cancelled in connection with the Merger. Under the terms of the 2007 Stock Incéntive Plan (the “Plan”), each holder was entitled to receive for each share covered by an option the amount by which the Fair Market Value (“FMV”) of the share' exceeded the exercise price. The Plan defined FMV as an amount determined by the Caris board of directors (the “Board”). The Plan required the Board, as the Plan Administrator, to adjust the options to account for the Spinoff. Under the terms of the Plan, the Board’s good faith determinations, as the Administrator, were conclusive unless arbitrary and capricious.
Caris told the option holders that they would receive the difference between $5.07 per share and the exercise price of their options, minus 8% that would go to an escrow account contemplated by the merger agreement. Of the $5.07, $4.46 was for RemainCo.; the remaining $0.61 was for SpinCo.

Plaintiff’s Contentions

The plaintiff-below, Kurt Fox (“Fox”), sued on behalf of a class of option holders. According to Fox, Caris breached the Plan because members of management, rather than the Board, as the Plan Administrator, determinéd how much the option holders would receive. He also contended that regardless of who made the determination, the $0.61 per share attributed to SpinCo was not a good faith determination and resulted from an' arbitrary and capricious process. Finally, he contended that the Plan did not permit Caris to withhold a portion of the option consideration as part of the escrow holdback contemplated by the merger agreement.
Trial took place from December 3-5, 2014. Fox had the burden óf proving his contentions by a preponderance of the evidence. The parties introduced 217 exhibits, depositions for nine witnesses, and presented live testimony from five fact witnesses and one expert. After trial, Caris was permitted to supplement the record with two additional exhibits.

Court of Chancery Decision

The Plan required and directed the Administrator (the entire Board) to use good faith to determine and properly adjust the options to account for the FMV of- SpinCo. These were contractual obligations, not fiduciary responsibilities, under the Plan: The Court of Chancery determined, as a matter of fact, that the Board, as the Plan Administrator, never made any determination of the value the option holders would receive under the Plan, and failed to adjust the options for the spinoff. The Court of Chancery concluded that certain directors were not even aware of their duties as the Plan’s Administrator or the Plan itself and merely deferred to Halbert — Caris’ Chairman, CEO and 70.4% stockholder. The Court of Chancery found that Caris’ CFO/ COO Gerard Martino (“Martino”) made the options-value determination to obtain a tax-free spinoff rather than to determine FMV for the Plan and that determination received perfunctory sign-off by Halbert.
*1040 The Court of Chancery found that regardless of who made the value determination, FMV was not determined, and the value received by the option holders was not determined in good faith. In addition, the Court of Chancery found the evidence used to support the decided value was determined by Martino through a process that was “arbitrary and capricious,” The Court of Chancery began its 82 page opinion with the following summary:
The evidence at trial established that the Board did not make the [Fair Market Value]' determination it was sup-poséd to make. Gerard A. Martino, the Executive Vice President, Chief Financial Officer, and Chief Operating Officer, made the determinations, then received perfunctory signoff from Halbert. The evidence at trial further established that the number Martino picked for SpinCo was not a good faith determination of Fair Market Value. It was the figure generated by PricewaterhouseCoopers (“PwC”), the Company’s tax advisor, using an intercompany tax transfer analysis that was designed to ensure that the Spinoff would result in zero corporate level- tax. Martino told PwC where to come out, and he supplied PwC with reduced projections to support the valuation he wanted. PwC’s conclusion that SpinCo had a value of $65 million conflicted with Martino’s subjective, belief from earlier in the year that TargetNow alone was .worth-between $150 and $300 million. It likewise" conflicted with the views held by Halbert, Fund VI, and the Company’s financial advisor. It contrasted with higher values that a different accounting firm, Grant Thornton LLP, -generated for the same businesses in a series of valuation reports prepared during 2011.
Miraca questioned PwC’s valuation and insisted on a second opinion from Grant Thornton. Martino and PwC met with Grant Thornton before the firm started work. - Two days later, Martino sent an email to Halbert that precisely anticipated the range of consideration per share that the two reports would support. Grant Thornton then proceeded to prepare a valuation that largely— and admittedly! — copied PwC’s analysis. Grant Thornton’s answer - came in just below PwC’s. The valuation was not de•termined in good faith, and the process was arbitrary and capricious.
Finally, the plain language of-the Plan did not permit Caris to withhold a portion of the option consideration in escrow. The merger agreement was not the contract that governed the relationship between the option holders and Caris. -The Plan was.
Caris breached the Plan. The class'is entitled to. damages of $16,260,332.77, plus pre- and post-judgment interest at the legal rate, compounded quarterly, from November 22, 2011 until the date of payment.

Appellant’s Contentions

The appellant argues that the Court of Chancery committed legal error by focusing on an officers’ (specifically Martino’s) conduct, instead of the Board’s conduct; finding a breach of the Plan contract’s subjective good faith standard; and measuring damages by what it decided an objectively reasonable Board would, have done. The appellant also contends that the Court of Chancery erred by imposing a heightened standard of review- on the Plan’s contractual good faith determinations; applying an arbitrary and capricious test on top of the good faith standard; and by defining the Plan contract's arbitrary, and capricious standard based on the federal Administrative Procedures Act. Finally, the appellant submits that-the Court of Chancery erred in valuing SpinCo based *1041 on outdated data; concluding that the underlying motivation in valuing SpinCo was to achieve zero taxes by using projections that were “falsely low”; and by calculating damages without making a determination as to the goodwill associated with SpinCo.

Standard of Review

After a trial, findings of historical fact are subject to the deferential ‘clearly erroneous’ standard of review. That deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact that are based- on physical or documentary evidence or infer-, enees from other facts. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.[2] When factual'findings are based on determinations regarding the credibility of witnesses, the deference already required by the clearly erroneous standard of appellate review is enhanced.[3]

Judgment Affirmed

As the Administrator of the Plan, the Board was required to perform certain obligations. The Court of Chancery found that “the Board did not make the [FMV] determinations it was supposed to make” under the Plan. Instead, the Court of Chancery found that Martino separately determined the option holders’ value. The court' rejected the defense theory, which attempted to equate a Board resolution approving the Miraca Transaction with Plan performance by the Board in its role as Administrator. The Court of Chancery found that the Board did not perform the Plan Administrator’s contractual obligations solely by noting in resolutions that such obligations, exist:
The minutes of the October 5, 2011 meeting reflect that the Board recognized the need to- adjust the exercise price of the stock options to reflect the value of the Spinoff. But the Board never set the adjusted price. The resolutions' adopted at the meeting state:
RESOLVED, - that, subject to the consummation of the Distribution [⅛&, the Spinoff], the exercise price of each Option shall be proportionately adjusted to take into account the Distribution;, [sic] provided, however, that any fractional shares resulting from the adjustment shall be eliminated[.]
[[Image here]]
The Board just as easily' could have passed a resolution saying “the Company- shall be in compliance with all of its contractual commitments.” Passing such a resolution would not make it so.[4]
The Court of Chancery also found that the Board subjectively believed Target-Now and Carisome had a FMV of “around $300 million” based upon extensive contemporaneous evidence. Although several defense witnesses tried to disavow such evidence, the Court of Chancery assessed their credibility, reviewed the contemporaneous evidence and decided not to credit their unsubstantiated trial testimony..
The Plan called upon the Board to determine FMV in good faith and to adjust the options to reflect the Spinoff. Because the Board did not act, the Court of Chancery stated the “good faith standard argu *1042 ably does not even apply.” Assuming it did apply, it was not clear to the Court of Chancery to whom it should be applied. The Court of Chancery concluded that Martino actually made the value determination, and Halbert signed off. Accordingly, the Court of Chancery’s decision analyzed whether Martino and Halbert acted in subjective good faith:
The operative question is whether the $65 million value they placed on SpinCo reflected their subjective belief about the value of TargetNow and Carisome. It did not.
[[Image here]]
Assuming for purposes of analysis that Martino and Halbert did believe subjectively in the valuation they selected, the process they followed was nonetheless arbitrary and capricious.
This Court must give deference to findings of fact by trial courts when supported by the record, and when they are the product of an orderly and lqgical deductive reasoning process, especially when those findings are based in part on testimony of live witnesses whose demeanor and credibility the trial judge has had the opportunity to evaluate.[5] The record in this appeal compels an application of that standard of appellate review. Accordingly, the judgment of the Court of Chancery is affirmed on the basis of and for the reasons stated in its July 28, 2015 decision.[6]

Cross-Appeal

Fox contends that a typographical error or mistake inadvertently altered the damages calculation. We will not address that claim of error in the first instance on appeal. Fox may raise that matter with the Court of Chancery after the mandate is issued in this appeal.

Conclusion

The judgment of the Court of Chancery is affirmed.

. Bank of N.Y. Mellon Trust Co., N.A. v. Liberty Media Corp., 29 A.3d 225, 236 (Del.2011).

. Cede & Co. v. Technicolor, Inc:, 758 A.2d 485, 491 (Del.2000) (citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

. Fox v. CDX Holdings, Inc., 2015. WL 4571398, at *17, *24 (Del. Ch. July 28, 2015) (emphasis in original).

. Nixon v. Blackwell, 626 A.2d 1366, 1378 n. 16 (Del.1993).

. Fox v. CDX Holdings, Inc., 2015 WL 4571398 (Del. Ch. July 28, 2015).