**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CARLOS EDUARDO LOREFICE LYNCH and GRUPO BELLEVILLE HOLDINGS, LLC, a Delaware Limited Liability Company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 2019-0356-MTZ |
| v. | ) | |
| R. ANGEL GONZALEZ GONZALEZ, TELEVIDEO SERVICES, INC., a Florida Corporation, JUAN PABLO ALVIZ, and FERNANDO GUIDO CONTRERAS LOPEZ, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### ORDER VACATING STATUS QUO ORDER AND DENYING STATUS QUO ORDER PENDING APPEAL

WHEREAS, upon review of Defendants' Emergency Motion to Lift and Vacate the Status Quo Order (the "Motion to Vacate") and Plaintiffs' Cross-Motion Pursuant To Court Of Chancery Rule 62(c) To Maintain The Status Quo Order (the "Motion to Maintain"), as briefed, it appears:

A.    Plaintiffs Carlos Eduardo Lorefice Lynch ("Lynch") and Grupo Belleville Holdings, LLC ("Belleville" or the "Company"), filed their complaint in May 2019 (the "Complaint"), seeking a declaratory judgment as to the Company's rightful management pursuant to 6 *Del. C.* § 18-110, as well as a declaratory judgment as to the Company's rightful management and ownership pursuant to 10

*Del. C.* § 6501.[1]  The Complaint's primary contention was that Lynch owns a 65% interest in Belleville, a Delaware company that holds a number of Argentine media assets.[2]  Ultimately, Lynch waived the Section 18-110 claim, and focused on ownership.[3]  Defendants Televideo Services, Inc. ("Televideo") and its owner and president, R. Angel Gonzalez Gonzalez ("Gonzalez"), contended Lynch held that interest in name only, but that it belonged to Televideo.[4]

B.     On July 5, 2019, the Court entered a status quo order (the "SQO") regarding Belleville's operations during the pendency of this litigation.[5]  The SQO placed Lynch at Belleville's helm based on the parties' stipulated terms, taking Lynch's allegations in his Complaint as true, and following the practice of retaining the apparent incumbent in managerial control pending resolution of a control dispute.[6]

---

[1] Docket Item ("D.I.") 1 [hereinafter "Compl."].

[2] *Id.*

[3] *See Lynch v. Gonzalez*, 2020 WL 4381604, at *49 (Del. Ch. July 31, 2020) [hereinafter "Post-Trial Op."] (concluding that "[i]n the final chapter of this litigation, Lynch waived his ostensibly motivating core claim under Section 18-110, as well as his primary affirmative defenses").

[4] D.I. 39.

[5] D.I. 33 [hereinafter "SQO"].

[6] *See Pharmalytica Servs., LLC v. Agno Pharm., LLC*, 2008 WL 2721742, at *3 n.6 (Del. Ch. July 9, 2008) ("As the label suggests, status quo orders, in the usual case, provide for incumbents to continue in office.").

C.      Paragraph 1 of the SQO permits Lynch "and the current management under Lynch" to serve as Belleville's manager and legal representative "during the pendency of the Litigation, or until otherwise ordered by the Court."[7]  When this Court enters its final judgment, this term will expire.[8]  The rest of the SQO provided bumper rails for Belleville's operation in the ordinary course of business, stopped the flurry of competing regulatory filings, and permitted Lynch to represent Belleville before Argentine regulators.[9]  By its terms, the entire SQO was to remain in full force and effect until this Court specifically orders otherwise,[10] such that it would terminate upon entry of a final judgment.[11]  The Court intends to enter a final judgment shortly upon resolving the pending fee dispute, which will terminate the SQO.[12]

---

[7] SQO ¶ 1 ("Lynch and the current management under Lynch . . . shall remain as the manager and legal representative in Argentina of Belleville during the pendency of the Litigation, or until otherwise ordered by the Court.").

[8] *See Frankino v. Nat'l Auto Credit, Inc.*, 1999 WL 959188, at *1 (Del. Ch. Sept. 28, 1999) (concluding that a status quo order naming the incumbent as manager *pendente lite* would operate "until this Court entered a final judgment in the § 225 action").

[9] SQO ¶¶ 2–6.

[10] *See id.* ¶ 1.

[11] *See Eagle Force Hldgs., LLC v. Campbell*, 2020 WL 3866620, at *11 & n.85 (Del. July 8, 2020) (holding that, despite a pending appeal, an action had "conclu[ded]" to terminate a status quo order upon entry of a final judgment; stating "[t]his reading is also more consistent with the commonly understood duration of a preliminary injunction[;]" and collecting cases).

[12] *See* D.I. 272 at 21.

3

D.    While this litigation was pending, Lynch tested the boundaries of the SQO.  Lynch pursued an opportunity to sell his personal interest in HFS Media S.A. ("HFS"), an Argentine Belleville subsidiary, which he purported to hold through a paper trail similar to the one by which he purported to hold an interest in Belleville.[13] Defendants contended that the proposed sale violated the SQO and would adversely affect Belleville's deliberately crafted corporate structure, considering its nature as a holding company.  While prohibiting the sale was beyond my jurisdiction,[14] Defendants' concerns were subsequently substantiated by the trial record.[15]

E.    On July 31, 2020, the Court issued a post-trial memorandum opinion (the "Opinion") finding, among other things, that Defendant Televideo is Belleville's majority member, and that documents purporting to show Lynch held a majority stake were fabricated to satisfy regulators.[16]  The Opinion also concluded that by, *inter alia*, bringing this litigation based on documents Lynch knew to be false, Lynch engaged in bad faith litigation.[17]

---

[13] *See* D.I. 224, 227, 228, 234, 236, 240; JX 117 at 161 (noting that Lynch "owns" his interest in HFS subject to a "[s]worn declaration stating that the true owner of the shares is [Gonzalez]").

[14] *See* D.I. 240.

[15] *See, e.g.*, JX 117 at 161.

[16] *See, e.g.*, Post-Trial Op. at *5, *13–14, *48–49.

[17] *See, e.g.*, *id.* at *48–49.

F.     On August 3, Defendants filed the Motion to Vacate, seeking to lift or vacate the SQO in light of the post-trial findings.[18]  On August 28, Plaintiffs opposed Defendants' motion and filed the Motion to Maintain, seeking to maintain the SQO pending appeal.[19]  The parties fully briefed the motions by September 8.[20]

G.     "Once [a] status quo order is in place, the party seeking modification bears the burden of showing why it should be modified."[21]  The SQO binds the parties until this Court enters a final judgment in the matter or specifically orders otherwise upon good cause shown.[22]  As with the decision to enter a status quo order, the decision to order otherwise is "within the discretion of the trial judge."[23]

> In deciding whether to modify or vacate a status quo order, it is proper for the court to assess whether the facts or circumstances justifying the initial restraint have changed.  This includes whether there is a basis to reconsider the court's initial determination that the plaintiff demonstrated . . . a . . . likelihood of success on the merits.[24]

[18] D.I. 243.

[19] D.I. 262.

[20] D.I. 243, 259, 262, 265, 269.

[21] *R&R Capital LLC v. Merritt*, 2013 WL 1008593, at *8 (Del. Ch. Mar. 13, 2013) (citing *Conn. Gen. Life Ins. Co. v. Pinkas*, 2010 WL 4925832, at *2 (Del. Ch. Nov. 18, 2010)).

[22] *See Eagle Force Hldgs.*, 2020 WL 3866620, at *11 & n.85; *R&R Capital LLC*, 2013 WL 1008593, at *8; *Frankino*, 1999 WL 959188, at *1.

[23] *R&R Capital LLC*, 2013 WL 1008593, at *8.

[24] *Germaninvestments AG v. Allomet Corp.*, 2019 WL 2236844, at *10 (Del. Ch. May 23, 2019) (citing *United Bhd. of Carpenters Pension Plan v. Fellner*, 2014 WL 1813280, at *1 & *2 (Del. Ch. May 1, 2014)), *aff'd in part, rev'd in part on other grounds and remanded*, 225 A.3d 316 (Del. 2020).

H.     Plaintiffs seek injunctive relief pending appeal in the form of an extension of the status quo order that installed Lynch as Belleville's manager *pendente lite*. "The purpose of an injunction pending appeal is to preserve the status quo until the Supreme Court has an opportunity to rule on the matter."[25]  Plaintiffs' Motion under Court of Chancery Rule 62(c)[26] and Supreme Court Rule 32(a)[27] requires this Court to exercise its discretion under four factors set forth in *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Commission*:[28]  (1) the likelihood of success on the merits of the appeal; (2) whether Plaintiffs would suffer irreparable harm if the injunction is not granted; (3) whether Defendants would suffer

---

[25] *Vanderbilt Income & Growth Assoc's v. Arvida/JMB Managers, Inc.*, 1996 WL 652773, at *3 (Del. Ch. Nov. 4, 1996), *rev'd on other grounds*, 691 A.2d 609 (Del. 1996).

[26] Ct. Ch. R. 62(c) ("Injunction Pending Appeal.  When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the Court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.").

[27] Supr. Ct. R. 32(a) ("Stay or injunction pending appeal. . . . [A] motion for stay must be filed in the trial court in the first instance.  The trial court retains jurisdiction over the initial motion and must rule on the initial motion regardless of whether the case is on appeal to this Court.  A stay or an injunction pending appeal may be granted or denied in the discretion of the trial court, whose decision shall be reviewable by this Court.  The trial court or this Court, as a condition of granting or continuing a stay or an injunction pending appeal, may impose such terms and conditions, in addition to the requirement of indemnity, as may appear appropriate in the circumstances.").

[28] 741 A.2d 356 (Del. 1998).

6

substantial harm if the injunction is granted; and (4) whether the injunction would serve the public interest.[29]

**IT IS ORDERED** this 22nd day of September, 2020:

1. At the beginning of this case, relying on the parties' stipulated terms and taking Plaintiffs' allegations as true, it appeared that to preserve Belleville's status quo was to keep Lynch at Belleville's helm. But the crucible of trial has revealed that Lynch never truly held a majority stake in Belleville, and was only ever its manager under the terms of the SQO. In view of my post-trial finding that Lynch has no rightful claim to Belleville's ownership or management,[30] Defendants contend there is good cause to vacate the SQO before entry of a final judgment.[31] I

---

[29] *Homestore, Inc. v. Tafeen*, 886 A.2d 502, 504 (Del. 2005) (citing *Kirpat, Inc. v. Del. Alcoholic Bev. Control Comm'n*, 741 A.2d at 357). Plaintiffs contend their Motion does not invoke Supreme Court Rule 32(a). I disagree. Plaintiffs move pursuant to Court of Chancery Rule 62(c) for an injunction pending appeal. Supreme Court Rule 32(a) offers a corollary for the same. Based on the plain text of that Rule, it addresses a "[s]tay *or injunction* pending appeal," and states that "[a] stay *or an injunction* pending appeal may be granted or denied in the discretion of the trial court, whose decision shall be reviewable by this Court." Supr. Ct. R. 32(a). The relationship between the rules is evident: when the parties "make their motion pursuant to Court of Chancery Rule 62[,] Supreme Court Rule 32(a) mandates that this Court consider the motion in the first instance even after appeal." *Bond Purchase, L.L.C. v. Patriot Tax Credit Props., L.P.*, 1999 WL 669358, at *1 (Del. Ch. Aug. 16, 1999). Accordingly, Delaware courts address the rules in tandem. *See, e.g. Miles v. Cookson*, 1995 WL 214400, at *1 (Del. Mar. 31, 1995); *Jagodzinski v. Silicon Valley Innovation Co., LLC*, 2011 WL 4823569, at *3 (Del. Ch. Aug. 16, 2011); *Bond Purchase, L.L.C.*, 1999 WL 669358, at *1; *Matter of State Insur. Dep't v. Remco Ins. Co.*, 1986 WL 3419, at *1 (Del. Ch. Mar. 18, 1986).

[30] *See generally* Post-Trial Op.

[31] *See* D.I. 243 ¶¶ 3–7.

7

agree. It would be improper to permit Lynch to retain power he only obtained by bad faith false allegations before this Court.

2. Accordingly, even though the SQO will expire on its own terms in a matter of days, the Motion to Vacate is **GRANTED**. Post-trial, I have concluded that Lynch's allegations underpinning the SQO were false and were brought in bad faith in an effort to steal what was not his. Lynch was never the incumbent: he filed this litigation as an attempt to seize ownership, not retain it.

3. The record to date, including the proposed HFS transaction,[32] also supports a fear that that Lynch may seek to monetize his purported interest in Belleville pending appeal. Allowing Lynch to remain in control of Belleville risks irreparable harm to Belleville, rewards his bad faith litigation, and flies in the face of my post-trial findings.

4. Lynch's assertions of irreparable harm if the SQO is vacated are speculative. He contends that if Defendants manage Belleville and represent it before Argentine regulators, those regulators would not approve the transfer of media licenses to Defendants' regime because Defendants misrepresented to those regulators that Lynch held Televideo's ownership stake. Those licenses are issued to Belleville subsidiaries. Lynch's assertions that Belleville would suffer irreparable harm from its subsidiaries' lost licenses depend on certain swift and irreversible

---

[32] *See* D.I. 240.

actions by Argentine regulators, which are far from guaranteed or predictable, at least by this Court. And by Lynch's logic, it is not clear that the regulators would approve the licenses with Lynch at the helm, as Lynch also participated in deluding those regulators.

5. Further, Plaintiffs' argument is undermined by and inconsistent with their positions on other motions in this litigation. When the parties tussled over the breadth of the SQO and the propriety of the HFS sale, Plaintiffs contended, and I agreed, that actions taken at the subsidiary level were too far removed to demonstrate harm to the Company, and that this Court lacked jurisdiction over Belleville's foreign subsidiaries.[33] Based on how the Motion to Maintain characterized the alleged harm from lost licenses, that potential harm is cabined to Belleville's subsidiaries—most of which are foreign. I cannot maintain the SQO to prevent harm to Belleville's subsidiaries when that "SQO is limited to Belleville's operations and does not reach Belleville's subsidiaries."[34]

6. For similar reasons, as framed by the *Kirpat* factors, the Motion to Maintain is **DENIED**. The Motion to Maintain mentions the first factor, likelihood of success on appeal, only in passing and does not point to any particular flaws in

---

[33] *See Lynch v. Gonzalez*, 2020 WL 3422399, at *2–3 (Del. Ch. June 22, 2020) [hereinafter "SQO Op."].

[34] *Id.* at *3.

9

the Opinion. While likelihood of success on appeal can only be known by the Supreme Court, in my view the case does not present much grist for the mill of additional litigation or investigation.[35] And much of the post-trial opinion was based on credibility determinations, which are only subject to reversal if clearly erroneous.[36]

7.     The Motion to Maintain makes two arguments with respect to the second and third *Kirpat* factors. First, it contends that reinstalling Gonzalez as Belleville's manager would harm the Company through loss of licensure. As explained, Lynch has not established the Company would suffer irreparable harm by losing licenses if Defendants resume its ownership and control.

8.     Second, Lynch contends the absence of a status quo order keeping him in charge of Belleville will harm Plaintiffs' appellate rights. Lynch points to the fact

---

[35] *See Wynnefield P'rs Small Cap Value L.P. v. Niagara Corp.*, 2006 WL 2521434, at *1 (Del. Ch. Aug. 9, 2006) ("When considering the appeal's likelihood of success on the merits, this Court is called upon not to second guess its decision, but to assess, as objectively as possible, whether the case presents a fair ground for litigation and more deliberative investigation." (quotation omitted)).

[36] *See, e.g.*, *Eagle Force Hldgs., LLC*, 2020 WL 3866620, at *5 ("After a trial, findings of historical fact are subject to the deferential 'clearly erroneous' standard of review. That deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact that are based on physical or documentary evidence or inferences from other facts. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. When factual findings are based on determinations regarding the credibility of witnesses, the deference already required by the clearly erroneous standard of appellate review is enhanced." (quoting *CDX Hldgs., Inc. v. Fox*, 141 A.3d 1037, 1041 (Del. 2016))).

that Belleville is a named plaintiff, and contends that giving Gonzalez, a defendant, control of Belleville would deprive Belleville of its right to appeal this Court's decision. Plaintiffs did not provide any law in support of this contention, and Defendants did not respond to it.

9. "[A] movant pursuant to Rule 62(c) must point to some injury other than compliance with this Court's Order and mootness of its appeal in order for this factor to weigh in the movant's favor."[37] The Court may deny a motion pursuant to Rule 62(c), and enforce its judgment against the party seeking appeal, even if doing so may harm that party by "undermin[ing] its opportunity for Supreme Court review of the judgment."[38] Here, even if removing Lynch as a manager would compromise Belleville's right to appeal as a named plaintiff, I conclude that potential harm does not carry the day. With Lynch as a co-plaintiff, there has been no concrete showing that putting Belleville back in the hands of his adversary would bar meaningful appellate review. When weighed against this Court's interest in enforcing its orders,[39] Plaintiffs' proposed harm to Belleville's appeal rights succumbs to the

---

[37] *Jagodzinski*, 2011 WL 4823569, at *3 (quoting *Bond Purchase, L.L.C.*, 1999 WL 669358, at *8).

[38] *Id.*

[39] *See Aveta Inc. v. Bengoa*, 986 A.2d 1166, 1183 (Del. Ch. 2009) ("Courts have inherent authority to enforce their own orders and judgments.").

conclusion that the Company is best served by having its rightful managers and owners—as adjudicated through trial—in control.

10. Furthermore, I conclude that procedural harm based on Belleville's purported right to appeal is illusory. At bottom, Belleville does not have standing to pursue any of the claims in this action. Although this case made it this far without this issue crystallizing, standing is jurisdictional in nature and may be raised *sua sponte*.[40]

11. Lynch brought Count I under 6 *Del. C.* § 18-110(a) individually, based on his allegation that he is a Belleville manager.[41] Section 18-110(a) specifies that such claims are considered "[u]pon the application of any member or manager."[42] As I have previously explained in this case, a Section 18-110 action is one *in rem*.[43] Belleville is not before the Court as a party *in personam*, but rather as the LLC whose

---

[40] *See, e.g.*, *Mills v. Trans Caribbean Airways, Inc.*, 272 A.2d 702, 704 (Del. 1970); *Friends of Sandbar Vill. v. Sandcap, LLC*, 2019 WL 2024380, at \*1 n.1 (Del. Ch. May 8, 2019).

[41] *See* Compl. ¶ 93 (quoting 6 *Del. C.* § 18-110(a)); *id.* ¶ 95 (bringing claim on basis that "Lynch is the sole manager and legal representative of Belleville").

[42] 6 *Del. C.* § 18-110(a). While the corporate analogue to Section 18-110 "grant[s] standing to the corporation to seek relief under the statute with respect to stockholder votes other than those conducted for the purposes of electing directors or officers[,] [t]he alternative entity statutes, in contrast, do not confer such standing upon the . . . limited liability entity itself, only on the partners, members, or managers, as the case may be." Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court Chancery* § 9.09[a], at 9-201 (*comparing* 8 *Del. C.* § 225(b), *with* 6 *Del. C.* § 18-110(a)).

[43] *See* SQO Op. at \*5–6.

managerial roles are the *res* to be adjudicated.[44]  It is precisely for that reason that the entity is typically named as a "nominal" defendant,[45] a party over which jurisdiction "must be asserted in order to enforce any subsequent judicial ruling," even though it "has no 'interest' in the outcome of judicial review."[46]  The Company will necessarily remain present in that limited capacity if Lynch decides to appeal my conclusion that he waived his Section 18-110 claim.  Accordingly, denying the Motion to Maintain does not irreparably or substantially harm Belleville on any forthcoming appeal of my determination of Count I.

12.  Count II seeks a declaratory judgment under 10 *Del. C.* § 6501, focusing on Defendants' alleged attempts to remove Lynch as Belleville's manager and legal representative, and to divest Lynch of an ownership stake.[47]  Count II reiterated a request to determine Belleville's rightful manager; that request was duplicative of Count I and unnecessary in view of this Court's statutory power under

---

[44] *See id.* at *6 ("Consistent with the limited scope of a Section 18-110 proceeding, the *res* is limited to Belleville's management and control.").

[45] *Cf., e.g.*, *A & J Capital, Inc. v. Law Office of Krug*, 2019 WL 367176, at *2 (Del. Ch. Jan. 29, 2019) (naming entity as the nominal defendant in an action pursuant to Section 18-110); *Obeid v. Hogan*, 2016 WL 3356851, at *1 (Del. Ch. June 10, 2016) (same); *Facchina v. Malley*, 2006 WL 2328228, at *1 (Del. Ch. Aug. 1, 2006) (same).

[46] *Hackett v. Bd. of Adjustment of City of Rehoboth Beach*, 794 A.2d 596, 599 (Del. 2002).

[47] *See* Compl. ¶¶ 107 ("Defendants took steps to wrongfully remove Lynch from his role as sole manager and legal representative of Belleville and to divest Lynch of his 65 percent ownership interest in Belleville, without Lynch's knowledge or consent."), 109 ("Defendants' asserted interests in the management and ownership of Belleville are adverse to Lynch's interests in the management and ownership of Belleville.").

13

Section 18-110. Count II's primary purpose was to ask the Court to declare that Televideo transferred its 65% stake in Belleville to Lynch.[48] While that request invokes "Plaintiffs'" allegations, it focuses on whether Lynch rightly holds an interest that Televideo, through Gonzalez, allegedly divested.[49]

13. Whether Belleville can, as a plaintiff, properly prosecute and appeal Count II invokes fundamental principles of standing and injury. "Standing is a threshold question that is jurisdictional in nature, and may be raised *sua sponte*. In order to have standing, a plaintiff must (among other attributes) have suffered an injury-in-fact, which, per the Complaint, the Plaintiff [Belleville] (as opposed to its members) has not."[50] In order to have standing under the Declaratory Judgment Act, a plaintiff must be interested and its rights must be affected:

> Plaintiffs seek a declaratory judgment pursuant to 10 *Del. C.* §[] 6501 . . . that give[s] the Court the power to "declare rights." *When an interested person's rights are affected* by a statute, ordinance, contract or franchise, *that person* "may have determined any question of construction or validity arising under [it], and obtain a declaration of rights, status or other legal relations thereunder."[51]

---

[48] *See id.* ¶¶ 105, 107, 108.

[49] *See id.* ¶¶ 103, 107.

[50] *Friends of Sandbar Vill.*, 2019 WL 2024380, at *1 (footnote omitted) (citing *Mills*, 272 A.2d at 704, and *Thornton v. Bernard Techs., Inc.*, 2009 WL 426179, at *4 (Del. Ch. Feb. 20, 2009)).

[51] *Del. State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1260 (Del. Super. Ct. 2018) (emphasis added) (footnotes omitted) (citing 10 *Del. C.* §§ 6501, 6502, and quoting 10 *Del. C.* § 6502).

The Declaratory Judgment Act further memorializes this principle by stating who shall be named as a party to a declaratory judgment action: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration."[52] This standing requirement echoes through and fortifies the mandate that a declaratory judgment address an actual controversy between parties with affected rights:

---

[52] 10 *Del. C.* § 6511 ("Parties"); *see also id.* § 6513 (stating that the term "person" "mean[s] any person, partnership, joint stock company, unincorporated association or society, or municipal or other corporation of any character whatsoever").

Belleville is not a proper party under the Declaratory Judgment Act because it is not a person that "ha[s] or claim[s] any interest which would be affected by the declaration." 10 *Del. C.* § 6511. Accordingly, Belleville cannot be a real party in interest to properly prosecute Count II. Under Court of Chancery Rule 17(a), "[e]very action shall be prosecuted in the name of the real party in interest." Ct. Ch. R. 17(a). Tethered to the rights of the parties affected, such a "claim generally must be maintained by a party who has legal title to the claim; that party is known as a 'real party in interest.'" *Kier Const., Ltd. v. Raytheon Co.*, 2005 WL 628498, at *12 (Del. Ch. Mar. 10, 2005) (applying New York law, but offering insights that this Court finds persuasive and consistent with Delaware law). "Stated another way, a real party in interest is the person who is entitled to the fruits of the action." *SolarReserve CSP Hldgs., LLC v. Tonopah Solar Energy, LLC*, 2020 WL 4251968, at *4 (Del. Ch. July 24, 2020) (quoting 59 Am. Jur. 2d Parties § 38 (2d ed. 2020)). Where a supposed party does not hold any rights at issue in the dispute, and therefore is not a real party in interest, that party also lacks standing to prosecute a claim. *See id.* at *4 n.55; *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1293 (Del. 2007) ("[A] real party in interest objection closely resembles the defense of failure to state a claim for relief because it presupposes that the plaintiff does not have the substantive right [standing] to enforce the claim he is making." (quoting 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1554 (3d ed. 2004)). The Court may address real parties in interest *sua sponte*. *See Diner Foods, Inc. v. City of Dover*, 229 A.2d 495, 496 (Del. 1967). At bottom, Count II turned on whether Televideo agreed to, in fact, transfer 65% of Belleville's ownership to Lynch. Belleville itself was not a party to the purported transfer: the Company had no entitlement to the fruits of the purported bargain, and accordingly has suffered no injury from that transfer that would give it claim "to the fruits of the action." *SolarReserve CSP Hldgs., LLC*, 2020 WL 4251968, at *4.

15

(1) It must be a controversy *involving the rights or other legal relations of the party seeking declaratory relief*; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy mu*st be between parties whose interests are real* and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[53]

14. Thus, a declaratory judgment must be pursued by the interested person whose rights are affected, and must address a controversy between parties with real and adverse interests. Under these requirements, Belleville has not been a proper party to Count II and, therefore, holds no rights to appeal that count.[54] Count II seeks a narrow declaration of the rights of Lynch on the one hand, and Televideo on the other, based on Televideo's purported transfer of 65% of Belleville to Lynch. Indeed, Count II was resolved under contractual principles based on the give and

---

[53] *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662–63 (Del. 1973) (emphasis added).

[54] This conclusion has jurisdictional consequences. "An actual controversy must exist for declaratory judgment jurisdiction." *Energy P'rs, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *6 (Del. Ch. Oct. 11, 2006). Delaware courts are devoid of jurisdiction where there is no actual controversy "between parties having adverse legal interests." *Id.* Belleville has no legal interest in the ownership dispute that could give rise to an actual controversy under Count II. The actual controversy exists only between the parties to the purported transfer: Lynch and Televideo. I do not have jurisdiction over a declaratory judgment with respect to the ownership dispute sought by Belleville as a named plaintiff.

Plaintiffs' Motion to Maintain raised this issue for the first time. To be clear, the Opinion did not issue a declaratory judgment addressing any rights belonging to Belleville. I entered a declaratory judgment that (1) Televideo owns 95% of Belleville because there was never a valid transfer of 65% of Televideo's ownership stake to Lynch, (2) that Lynch owns 0% of Belleville, and (3) that Gonzalez owns 5% of Belleville. *See* Post-Trial Op. at *32, *39; *see also id.* at *3 n.13 ("At all times, Televideo acted through Gonzalez. To the extent that Gonzalez took any action with respect to the disputed 65% membership interest in Belleville, . . . he did so on Televideo's behalf.").

16

take between Gonzalez and Lynch. As parties to the purported 65% transfer—and, therefore, to any dispute arising therefrom—Lynch and Televideo were the purported interestholders, not Belleville. Lynch and Televideo alone have rights affected by any claim of ownership in this action.

15. In the game of keep-away between Lynch and Televideo, Belleville was the ball, not a player. Belleville has no rights that are relevant to any declaration of ownership under Count II, and Belleville is not and will not be the beneficiary of any declaratory relief that has been fashioned in this action. And Plaintiffs have not demonstrated how Belleville suffered any cognizable harm from the purported private transfer between Televideo and Lynch—in which the Company had no involvement—that would give Belleville standing to pursue a declaratory judgment under Count II. Belleville cannot prosecute Count II for a declaratory judgment as to Televideo and Lynch's respective ownership stakes in the Company because it does not have standing as a proper party with a real and affected interest in the claim.[55]

16. Count III, for injunctive relief, seeks a remedy and does not state a cause of action.[56] To the extent it is duplicative of Count I, denying the Motion to

---

[55] The final judgment and order in this matter shall reflect this determination.

[56] *See* Compl. ¶¶ 114–27; *Simplexity, LLC v. Zeinfeld*, 2013 WL 5702374, at *1 (Del. Ch. Oct. 17, 2013) (noting that a count that is "merely a request for injunctive relief" is "not a cause of action in its own right").

17

Maintain does not harm Belleville on appeal, as it is before the Court *in rem*. To the extent Count III is duplicative of Count II in that it requests injunctive relief with respect to Lynch's alleged ownership interest in Belleville, denying the Motion to Vacate does not pose substantial or irreparable harm to Belleville, as it does not have standing to prosecute an appeal from my determination that Lynch has no rightful ownership of the Company. Count IV, for conversion, is brought only by Lynch.[57]

17.　　Thus, of the Complaint's three claims for relief, Belleville never had standing to pursue declaratory judgments in Counts I and II, and was not a plaintiff for Count IV's conversion claim. Where a litigant lacked standing to pursue an action, the litigant lacks standing to take an appeal from a loss.[58] Because Belleville had no standing to pursue Counts I, II, or IV, it has no appellate rights. If Belleville proceeds on appeal, it will only be in its capacity as the *res* before the Court for Count I.

18.　　Because Belleville has no appellate rights, restoring Belleville to Gonzalez' control cannot diminish or harm any proper plaintiff's ability to pursue an appeal. Lynch retains his personal appellate rights, and has not argued or otherwise demonstrated that denying the Motion to Maintain would substantially or irreparably impair those rights. More generally, both sides of the dispute over the

---

[57] *See* Compl. ¶¶ 128–37; Post-Trial Op. at *24.

[58] *See Walls v. Del. State Police*, 648 A.2d 426 (Del. 1994).

65% stake are adequately represented by the factions who seek to hold that stake. The third and fourth *Kirpat* factors weigh in favor of denying the Motion to Maintain.

19.    In contrast, under the third and fourth *Kirpat* factors, Defendants face substantial and real irreparable harm if Lynch is installed as manager:[59] as explained, Lynch has no rightful claim to Belleville's ownership or management, and the risk of his irreversibly monetizing what he wrongfully possesses pending appeal is real.

20.    Finally, the public interest is best served by permitting the rightful manager of a company to manage it, and the rightful owner to own it, pending appeal, rather than a plaintiff who sought to wrest an ownership interest via bad faith litigation. Lynch's doomsday predictions for the company and its workforce are speculative and attenuated.

*/s/ Morgan T. Zurn*
Vice Chancellor

---

[59] *See Bond Purchase, L.L.C.*, 1999 WL 669358, at *8 (considering, under *Kirpat*, whether the non-moving party would suffer harm from the relief requested).