IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHAVEZ T. WILLIAMS, BEVERLY A. MUNDY, and ROSALYN WILLIAMS CARROLL, | § § § § | No. 186, 2025 |
| | § § | Court Below–the Court of Chancery of the State of |
| Defendants Below, Appellants, | § § | Delaware |
| v. | § § § | C.A. No. 2023-0253 |
| CYNTHIA H. HALL and SHELLEY I. CARTER, | § § § | |
| Plaintiffs Below, Appellees. | § § | |

Submitted: October 22, 2025
Decided: January 6, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

After careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) This is an appeal from a Court of Chancery decision quieting title to a property located in Frankford, Delaware (the "Property").[1] The Property's last owner of record was Mariah Jane Walters.[2] Mariah passed away and was survived

---

[1] Appellant's Opening Br. 1–2 (filed June 12, 2025) [hereinafter "Opening Br. _"].

[2] *Id.* at 3.

by her sister, Frances Mason.[3]  Appellants are the descendants of Frances Mason.[4]  Appellees claim that they are Mariah's granddaughters.[5]

(2)     In the action below, the parties offered competing theories of ownership of the Property, but both relied on Delaware's intestacy statute.[6]  Appellees claimed that they were direct descendants of Mariah through her son, Joshua Walters.[7]  Appellants disputed that Mariah ever had a son named Joshua.[8]  Appellants maintained that the Property had passed to Frances Mason, Mariah's sister, and that they became the owners as Mason's descendants.[9]

(3)     Appellees claimed that Mariah gave birth to two sons – Joshua and Chester Jr.[10] – and that Joshua predeceased Mariah in 1973.[11]  Two years later, Mariah died intestate, survived by Chester Jr.[12]  Two years after Mariah's death, Chester Jr. also died intestate, leaving no heirs.[13]

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *See generally* 12 *Del. C.* § 503.

[7] *Hall v. Mundy*, 2025 WL 48157, at *1 (Del. Super. Jan. 8, 2025) [hereinafter "*Opinion*"].

[8] Opening Br. 3–4, 30; App. to Opening Br. at A112 (Trial Tr. 56:4–7) [hereinafter "A_"].

[9] Opening Br. 3.

[10] *Opinion* at *1.

[11] *Id.* at *2.

[12] *Id.* at *3.

[13] *Id.*

2

(4)     Frances Mason was Mariah's sister and survived both Mariah and Chester Jr.[14]    Following Chester Jr.'s death, a person named Jeni Coffelt administered both Mariah's and Chester Jr.'s estates.[15]  Coffelt identified Mason as the sole beneficiary of both Mariah's and Chester Jr.'s estates.[16]  Coffelt closed both estates without objection in 1979.[17]  The Recorder of Deeds Office does not have any records that confirm the ownership of the Property.[18]  The records from the Register of Wills, however, state that the owners of the Property are the "Mason heirs."[19]

(5)     Appellees claim that they called the Register of Wills on one occasion to inquire about the ownership of the Property.  They allege that during the call someone told them that the Property belonged to "heirs."  Appellees believed that they were included in "heirs" and thought that no further action was required on their part.[20]  For the decades that followed, neither party substantially improved or maintained the Property.[21]

---

[14] A4–5 (Pre-Trial Stipulation & Worksheet); *Opinion* at *3.

[15] Opening Br. 9–10.

[16] *Id.*

[17] *Id.*

[18] *Opinion* at *3.

[19] Opening Br. 3.

[20] Appellee's Answering Br. 6 (filed July 11, 2025) [hereinafter "Answering Br."]; A84 (Trial Tr. 28:18–24); *Opinion* at *5.

[21] *Opinion* at *3.

3

(6)   A critical factor in this dispute is the parties' lack of care for the Property. Neither Appellants nor Appellees maintained or attempted to develop the Property. The Property is currently a vacant lot. Neither party can explain what happened to Mariah's house; it just disappeared.[22] The Property has been described as an "overgrown forest."[23]

(7)   Another essential factor in this dispute is the passage of time between Mariah's death and Appellees' legal action. Mariah died over forty-eight years ago. Appellants contended below that regardless of family lineage, given this substantial lapse in time, the action should be precluded by the doctrine of laches.[24]

(8)   After a one-day trial, the Court of Chancery determined that the action was not precluded by laches.[25] The court reasoned that (a) Appellees did not unreasonably delay in asserting their rights, as they "believed the property was considered 'heirs property' and that they did not need to act";[26] and (b) Appellants did not show prejudice as the Property was not substantially improved over the years.[27]

---

[22] *Opinion* at *3, *6.

[23] Answering Br. 7; *see also* A118 (Trial Tr. 62:14–18).

[24] Opening Br. 14–26.

[25] *Opinion* at *1.

[26] *Id.* at *5.

[27] *Id.* at *6.

(9)   The court further found, by a preponderance of the evidence, that Joshua was the father of Appellees and the son of Mariah.[28]  Although Appellees did not offer extensive documentary evidence of their lineage, they testified in detail about their memories of Joshua as their father, as well as visiting Mariah at the Property.[29]  Also, one of Appellants conceded at trial that he remembered Appellees as "cousins" from childhood.[30]  Finding Appellees' testimony more credible and considering the concession made by Appellants, the Court of Chancery entered summary judgment in favor of Appellees.[31]  This appeal followed.

(10)   Appellants raise three arguments on appeal.  First, Appellants argue that the Court of Chancery erred in not precluding the action under the doctrine of laches. Second, Appellants contend that the Court of Chancery erred in adopting a preponderance of the evidence standard when determining Appellees' lineage, and that clear and convincing evidence is the correct standard.  Third, Appellants claim that Appellees did not prove their lineage from Mariah by clear and convincing evidence.[32]

---

[28] *Id.* at *1.

[29] *See Opinion* at *2; A62–65 (Trial Tr. 6:22–9:21).

[30] A112 (Trial Tr. 56:8–20).

[31] *Opinion* at *1.

[32] Opening Br. 4–5.  Appellants structured this appeal as four separate arguments.  However, the second argument (challenging the court's factual finding on Appellee's lineage) and the fourth argument (arguing that Appellees' evidence did not meet the clear and convincing evidentiary

(11) On appeal, questions of law, including evidentiary standards and the Court of Chancery's application of legal rules, are reviewed *de novo*.[33] We defer to the factual findings of the Court of Chancery and review only for clear error.[34] "When factual findings are based on determinations regarding the credibility of witnesses, the deference already required by the clearly erroneous standard of appellate review is enhanced."[35]

(12) First, we conclude that Appellees' action was not precluded by the doctrine of laches. "Laches is an equitable defense based on the theory that 'a person with knowledge of an impending transaction should not be permitted to sit by in silence while positions are fundamentally changed by potential adversaries and the rights of third parties accrue.'"[36] The defense of laches has two essential elements: (a) plaintiff must have knowledge of the claim; and (b) there must be prejudice to the defendant arising from an unreasonable delay by plaintiff in bringing the claim.[37] In evaluating a defense of laches, "[w]hat constitutes unreasonable delay and

---

standard) concern the same issue – whether the evidence presented at trial was sufficient to establish Appellees' lineage from Mariah. Therefore, we address these arguments together.

[33] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 768 (Del. 2013) ("This Court reviews the interpretation and application of legal precepts, such as the statute of limitations and the doctrine of laches, *de novo*.").

[34] *CDX Holdings, Inc. v. Fox*, 141 A.3d 1037, 1041 (Del. 2016).

[35] *Id.*

[36] *Fike v. Ruger*, 752 A.2d 112, 113 (Del. 2000) (citation omitted).

[37] *Id*.

prejudice are questions of fact that depend upon the totality of circumstances."[38] Here, Appellants did not show that they suffered prejudice and therefore could not assert laches as a defense to preclude Appellees' claim.[39] The Court of Chancery's factual findings were supported by the record and were not clearly erroneous, and we therefore affirm the court's holding regarding the absence of prejudice. Because we affirm that there was no prejudice, we need not address whether there was "unreasonable delay."[40]

(13) Second, we hold that the Court of Chancery applied the correct evidentiary standard in making its factual findings. Appellants contend that in an *in rem* action, every fact must be proved by clear and convincing evidence, including the factual determination that Joshua was Mariah's son.[41] Appellants rely on *State v. Sweetwater Point, LLC*, in which the Court of Chancery ruled: "[a] true in rem quiet title action . . . would require proof by clear and convincing evidence . . . . Each party must establish the strength of its own title first, rather than relying solely on flaws in the competing chain of title."[42] Appellants interpret *Sweetwater* too

---

[38] *Hudak v. Procek*, 806 A.2d 140, 153 (Del. 2002).

[39] *Opinion* at *6.

[40] *Wechsler v. Abramowitz*, 1984 WL 8244, at *1 (Del. Ch. Aug. 30, 1984) (holding that without prejudice, "[m]ere delay alone will not give rise to the equitable defense of laches.").

[41] Opening Br. 31–32.

[42] *State v. Sweetwater Point LLC*, 2017 WL 2257377, at *8 (Del. Ch. May 23, 2017).

7

broadly. Under *Sweetwater*, a party must "establish the strength of its own title"[43] with clear and convincing evidence, but the elevated standard does not apply to all factual issues.[44] We have previously clarified that the clear and convincing standard is used in civil cases involving "a significant deprivation of liberty that requires due process protection" or the protection of "particularly important individual interest[]"; and that a dispute over family lineage, despite the potential serious consequences involved, does not warrant raising the evidentiary standard.[45] The Court of Chancery correctly applied a preponderance of evidence standard in determining whether Joshua was Mariah's son.

(14) Third, because we have held that the trial court correctly applied a preponderance of the evidence standard, we hold that Appellees presented sufficient evidence to prove their lineage from Mariah. "Proof by a preponderance of the evidence means proof that something is more likely than not. It means that certain

---

[43] *Id.*

[44] We have previously applied the "clear and convincing evidence" standard in civil actions involving termination of important individual rights (e.g., termination of parental rights or the right to withdraw or withhold treatment), or rebutting a legal presumption (e.g., the presumption of testamentary capacity). Those issues are not present here. *See e.g.*, *Matter of Tavel*, 661 A.2d 1061, 1070 (Del. 1995) ("This Court has held that the clear and convincing standard of evidentiary proof is applicable in judicial proceedings involving the termination of parental rights. Likewise, that standard has also been applied to other civil proceedings involving the termination of important rights." (citations omitted)).

[45] *G.L. v. S.D.*, 403 A.2d 1121, 1126–27 (Del. 1979) (rejecting the "clear and convincing evidence standard" in a family law matter and explaining that "while serious financial consequences may be said to hinge on a determination of paternity, similarly serious consequences follow from application of the 'preponderance of the evidence' standard in all fields of civil law, including contract and tort. That alone is not reason enough to raise the standard of proof.").

evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not."[46]

(15) Although the evidence that Appellees provided to establish their lineage from Mariah was not entirely satisfying, it was not opposed by any evidence to the contrary from Appellants. Appellants also conceded that they remembered Appellees as their cousins from childhood.[47] "When factual findings are based on determinations regarding the credibility of witnesses, the deference already required by the clearly erroneous standard of appellate review is enhanced."[48] Because we hold that the Court of Chancery applied the correct evidentiary standard, we defer to the court's determination that Appellees are, more likely than not, Mariah's granddaughters.[49]

---

[46] *R.I. Off. of Gen. Treasurer on Behalf of Employees' Ret. Sys. of R.I. v. Paramount Glob.*, 331 A.3d 179, 190 (Del. Ch. 2025).

[47] A112 (Trial Tr. 56:8–20).

[48] *CDX Holdings, Inc.*, 141 A.3d at 1041.

[49] *See CDX Holdings*, 141 A.3d at 1041 ("After a trial, findings of historical fact are subject to the deferential 'clearly erroneous' standard of review. That deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact that are based on physical or documentary evidence or inferences from other facts. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. When factual findings are based on determinations regarding the credibility of witnesses, the deference already required by the clearly erroneous standard of appellate review is enhanced.").

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice