Joseph PAUL,* Petitioner Below, Appellant,

v.

Shannon PAUL, Respondent Below, Appellee.

No. 284, 2012.

Supreme Court of Delaware.

Submitted: Oct. 31, 2012.

Decided: Dec. 10, 2012.

* This Court *sua sponte* assigned pseudonyms to captioned parties by Order dated May 29, 2012, pursuant to Supreme Court Rule 7(d).

Pseudonyms are also used for referenced witnesses.

Kathryn J. Laffey, Esquire and Shauna T. Hagan, Esquire, Kelleher & Laffey, Wilmington, DE, for Appellant.

John A. Clark, III, Esquire, Scott E. Swenson, Esquire and Mary I. Akhimien, Esquire, Connnolly Gallagher LLP, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice:

In this appeal we consider the meaning of the term "regularly residing" as used in Delaware's alimony statute. The Family Court denied appellant's petition to terminate alimony, finding that appellee and her companion were not permanently or continuously residing together. The trial court focused on the fact that appellee and her companion maintained separate homes, and the absence of evidence as to whether they spent the majority of their free time together. We hold that the trial court applied an incorrect standard in evaluating the evidence. First, the term "regularly residing" means "liv[ing] together with some degree of continuity...."[1] Second, the fact that appellee and her companion are retirees does not change the analysis of whether they are regularly residing together. Third, two people may be regularly residing together even though they maintain separate homes. The Family Court decision must be reversed.

## Factual and Procedural Background

Joseph and Shannon Paul (Husband and Wife) were divorced in 2006. The parties entered into a divorce agreement, which provided that alimony shall terminate upon "cohabitation of Wife as that term is defined in 13 *Del. C.* § 1512(g)."[2] At some time prior to 2010, Wife became romantically involved with Fletcher Vance. As a result, Husband hired an investigator to conduct surveillance for the purpose of determining whether Wife was cohabiting with Vance. Based on the investigator's report, which spanned 9 months, Husband filed a petition to terminate alimony.

At the hearing on Husband's petition, Philip Gracey, a private investigator testified that over a period of about five months, he saw Vance's car at Wife's house 25 of the 37 days that he observed. The car was there late at night and early the next morning. In addition, Gracey observed Vance "retreiving the paper, taking the trash out, feeding the cat, opening the garage door (which he knew the code to), and watering plants, all on multiple occasions."[3] He also saw Vance doing yard work and escorting a painter into the house.

Wife testified that she and Vance have an exclusive relationship and that he stays at her house about two to four nights a week. They go out for dinner and dancing, and take vacations together, but they share expenses. Wife testified that she could not live with Vance because he is neat and she is messy. She said that he keeps no clothing or personal effects at her house. Vance explained that he needs to feel independent and that maintaining his own home serves that purpose. In addition, he is emotionally attached to his

1. *Andrews v. Andrews*, 16 A.3d 937, 2011 WL 1380010, at *2 (Del. Feb. 18, 2011)(TABLE).

2. Appellant's App. at A–11.

3. *Paul v. Paul*, No. CN05–04191, at 3 (Del. Fam. May 3, 2012).

home because it preserves memories of his late wife.

The Family Court held that Husband failed to establish that Wife permanently or continuously resides with Vance. The court noted that, since both are retired, they have abundant free time to spend together. The evidence, however, showed that Wife and Vance pursue different activities during the day. In addition, the court gave weight to the fact that there is no real pattern to the time they spend together. Finally, the court stated that the "term reside . . . excludes a couple who maintains separate and independent dwelling places." [4]

## Discussion

The sole issue on appeal is whether the Family Court applied the correct legal standard in deciding whether Wife and Vance are cohabiting. The alimony statute provides, in relevant part:

[T]he obligation to pay future alimony is terminated upon the death of either party or the remarriage or cohabitation of the party receiving alimony. As used in this section, "cohabitation" means regularly residing with an adult . . . if the parties hold themselves out as a couple, and regardless of whether the relationship confers a financial benefit on the party receiving alimony. Proof of sexual relations is admissible but not required to prove cohabitation. . . . [5]

Wife concedes that she and Vance have an exclusive relationship and hold themselves out as a couple. The remaining question is whether they are "regularly residing" together.

In reviewing the evidence, the trial court apparently accepted all witnesses' testimony as credible. The court then attempted to identify factors or "themes" that tend to prove or disprove the "regularly residing" requirement of cohabitation. It found that the most significant factor is the amount of non-working time the couple spends together. Another related factor is the extent to which the two people maintain independent lives, which includes both their daily activities and whether they keep separate residences.

■ In order to place these factors in context, the trial court attempted to define the term "regularly residing." The trial court used the dictionary definition of "reside," which means "to dwell permanently or continuously. . . ." [6] But the alimony statute includes the modifier, "regularly," which means "usually or ordinarily." [7] Thus, the term "regularly residing" does not mean "residing." It means usually residing or, stated another way, "living together with some degree of continuity." [8]

Perhaps because the Family Court used the wrong definition of "regularly residing," it also placed undue emphasis on factors that are not very significant. The court noted that Wife and Vance have unlimited free time because they are retired, but they pursue different hobbies during the day. The implicit premise is that married retired couples spend most of their time together. There is no evidence, however, to support that premise. Thus, their daytime activities have little relevance to the issue of whether they live together with some degree of continuity.

4. *Paul,* No. CN05–04191, at 21.

5. 13 *Del. C.* § 1512(g).

6. *Paul,* No. CN05–04191, at 15.

7. RANDOM HOUSE UNABRIDGED DICTIONARY 1624 (2d ed.1993).

8. *Andrews,* 2011 WL 1380010, at *2.

The Family Court also focused on the fact that Wife and Vance maintain separate residences. Indeed, at the conclusion of its decision, the Family Court stated that, "[e]very ... definition of the term reside ... excludes a couple who maintains separate and independent dwelling places." [9] That is incorrect. It is settled law that a person may have more than one residence at the same time.[10] The fact that a couple maintains two residences is less important than the extent to which they are involved in the normal activities associated with home ownership. The Family Court found that Vance behaves like someone who lives at Wife's home. He has a key to Wife's house, takes out the garbage, does yard work, and showed a painter around the house.

In sum, we conclude that the Family Court evaluated the evidence against the wrong standard. Under the correct definition of "regularly residing," several of the factors that the trial court found important have little or no relevance. This matter must be remanded for the Family Court to address the petition to terminate alimony in accordance with this opinion.

### Conclusion

Based on the foregoing, the judgment of the Family Court is reversed and this matter is remanded for further proceedings consistent with this decision. Jurisdiction is not retained.

---

**9.** *Paul*, No. CN05–04191, at 21.

**10.** *Pascavage v. Pascavage*, 1994 WL 837452, at *9 (Del.Fam. June 24, 1994), *aff'd sub nom.*

*Pascavage v. Aperio*, 1995 WL 120495 (Del. Feb. 28, 1995).