IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINN RICHARDSON,[1] | § | |
| | § | No. 441, 2023 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below – Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN20-04261 |
| NORAH REED, | § | Petition No. 22-24703 |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: July 24, 2024
Decided: August 8, 2024

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, Finn Richardson, appeals from a Family Court order denying his petition to terminate alimony. He argues that the Family Court should have found that his former spouse, Norah Reed, was cohabitating with her partner which would terminate his alimony obligation. For the reasons set forth below, we disagree and affirm the Family Court's judgment.

---

[1] The Court assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2)     After Richardson and Reed divorced, the Family Court entered an order resolving ancillary matters that required Richardson to pay Reed monthly alimony. On November 9, 2022, Richardson filed a petition to terminate alimony. He claimed that Reed was no longer entitled to alimony because Reed and her partner were cohabitating. Under 13 *Del. C.* § 1512(g), "the obligation to pay future alimony is terminated upon the death of either party or the remarriage or cohabitation of the party receiving alimony."[2]  Co-habitation is defined as "regularly residing with an adult of the same or opposite sex, if the parties hold themselves out as a couple, and regardless of whether the relationship confers a financial benefit on the party receiving alimony."[3]  Reed denied that she was cohabitating with her partner.

(3)     The Family Court scheduled an evidentiary hearing to address the matter. Richardson, Reed, and Richardson's private investigator testified in person. Reed's partner testified over Zoom. Reed testified that, although she was in a relationship with her partner, they were not cohabitating. According to Reed, she and her partner lived in separate residences, covered their own expenses, rarely helped each other with chores at their respective properties, and tended to spend, at most, weekends together.[4]  Any additional time spent together that was observed by the private detective, Reed testified, was not typical. She attributed the month

---

[2] 13 *Del. C.* § 1512(g).
[3] *Id.*
[4] App. to Appellant's Opening Br. at A41-49, [hereinafter "A_"].

together in her residence to her birthday month and the fact that her partner's daughter contracted COVID, which required her partner to leave his house.[5]

(4) On cross-examination, Reed was caught in several inaccuracies. For instance, Reed testified she had not been on a cruise with her partner, when the facts showed otherwise.[6] She also failed to remember several other vacation trips with her partner.[7]

(5) Reed's partner testified that, although they were in a relationship, they were not regularly residing with each other. He noted that, with a two-hour drive between their separate residences, his visits usually lasted only for a weekend. By his recollection, these visits generally occurred once or twice a month.[8]

(6) Finally, the court heard from a private investigator Richardson hired. She testified that she believed Reed and her partner resided together for most of the month between August 20, 2022 and September 19, 2022.[9] The investigator also testified that she observed Reed and her partner hide the partner's vehicle from Richardson when he delivered the alimony payment.[10]

---

[5] A51-52.
[6] A43-46.
[7] A38.
[8] A80.
[9] A125-A140.
[10] A142.

(7)     The Family Court denied Richardson's motion.[11]  The court reasoned that, even though Reed and Richardson were in a relationship and spent nearly one month together, the number of nights spent together is just one important factor when determining whether individuals are cohabitating.  According to the court, Richardson's evidence of cohabitation was too limited in time to prove they regularly resided together.  And other evidence pointed away from cohabitation.

(8)     Although the court was skeptical that the number of overnights Reed spent with her partner while under observation was atypical, it "[could] not find that the parties' [sic] time together in one 6-week period, with no other indicia of shared home ownership, proves that they are cohabiting."[12]  The court also ordered the parties to pay their own attorneys' fees and other costs.[13]

(9)     On appeal, Richardson contends that the Family Court erred when it found that Reed was not cohabitating with her partner.  He argues that Reed stipulated that she and her partner held themselves out as a couple.  Considering their relationship, Richardson contends that the "uncontroverted" evidence from the hearing showed that Reed and her partner usually resided together with some degree of continuity.  The Family Court went wrong, says Richardson, when it focused

---

[11] A351-A365 (hereinafter ["Family Court Order"].

[12] Richardson bore the burden to prove cohabitation. *Glass v. Glass*, 537 A.2d 552, 553 (Del. Fam. Ct. 1987) ("Under the practice of this jurisdiction, the party seeking to modify or terminate the alimony order bears the burden of establishing a real and substantial change of circumstances.").

[13] As part of the court's decision regarding attorneys' fees and other costs, it also denied Reed's October 3, 2023, Motion for Reargument.

narrowly on whether the parties acted as homeowners rather than whether they were regularly residing with each other.

(10) This court examines both the facts and the law when reviewing alimony.[14] Findings of fact will not be disturbed unless they are clearly erroneous.[15] Conclusions of law are reviewed *de novo*.[16] And if the court's application of the law was proper, the standard of review is whether the Family Court exceeded its discretion by finding the presented evidence insufficient to show that Reed and her partner were regularly residing together.[17]

(11) As noted earlier, Richardson bore the burden of proving that Reed and her partner were cohabitating. Reed agreed that she and her partner held themselves out as a couple. Under the statute, Richardson had to show that Reed and her partner were "regularly residing" together, meaning with some degree of continuity.[18] On appeal, Richardson acknowledges that the question of "cohabitation is not subject to a bright line test, and there exists a potpourri of case law on circumstances that have and have not constituted cohabitation."[19] His argument for error boils down to

---

[14] *Fletcher v. Feutz*, 246 A.3d 540, 547 (Del. 2021) ("On appeal from a Family Court decision awarding alimony, we review the facts and the law, as well as the inferences and the deductions made by the trial judge.").

[15] *Id.* at 548. ("We conduct a limited review of factual findings of the Family Court to confirm they are supported by the record and are not clearly erroneous.").

[16] *Id.* ("We review rulings of law *de novo*.").

[17] *Andrews v. Andrews*, 16 A.3d 937, 2011 WL 1380010 at *2 (Del. 2011) (TABLE) ("If the Family Court has correctly applied the law, the standard of review is abuse of discretion.").

[18] *Paul v. Paul*, 60 A.3d 1080, 1083 (Del. 2012).

[19] Opening Br. at 20.

whether the court focused too narrowly on household expenses to the exclusion of other evidence of cohabitation.

(12) We disagree. First, the Family Court properly looked to the way most people might cohabitate – reside in the same house together, jointly contribute to household expenses, and share in the responsibilities of home making. The court found the evidence insufficient to support cohabitation because Richardson's evidence almost exclusively concerned the first of these criteria. In addition to the fact that they had separate residences, the court found that:

> [t]here were no bank statements to show that household expenses are shared; no pictures or video from the private investigator to show that [Reed's partner] has a key to the residence; and nothing to indicate that he leaves personal items at [Reed's] house or that he does chores or household repairs at the residence.[20]

(13) Richardson failed to present evidence of cohabitation other than the nights spent together in a one-month period.[21] As our Court instructed in *Paul v. Paul*, the Family Court must consider more than consecutive nights together. It also must consider "the extent to which [parties] are involved in the normal activities associated with home ownership."[22] Without such a showing, and without a

---

[20] Family Court Order at 14.
[21] *Id.* As the court noted, Richardson's "case was based almost exclusively on the number of overnights the parties spent together during a limited time period."
[22] *Paul*, 60 A.3d at 1083.

6

lengthier stretch of overnights together, the court was unable to find on the record before it that Reed and her partner were acting like cohabitating homeowners.

(14) Relying on *J.S. v. B.S.*, Richardson argues that Delaware courts have found cohabitation on a similar timeline as this one. In J.S., the court concluded J.S.'s alimony should be terminated after she cohabitated with another for several months. But Richardson fails to consider the specific facts in *J.S.* For one thing, the court in *J.S.* found the investigator's testimony credible. Here, Richardson's investigator omitted important information, calling her credibility into question.[23] And unlike in *J.S.*, although the court expressed skepticism at some of Reed's testimony, it did not conclude that she "took significant and vigorous measures to conceal her cohabitation."[24] Finally, and perhaps most importantly, in *J.S.* the petitioner provided observations for a roughly four-month period. It was on that basis that the court could conclude the evidence of cohabitation was

---

[23] A173-174. On cross-examination, Richardson's investigator acknowledged that she did not include in her report a period of seven consecutive days in which she conducted surveillance and did not see Reed's partner at her home.

[24] *J.S. v. B.S.*, 2013 WL 9605961, at *14 (Del. Fam. Ct. Dec. 30, 2013), *on reargument*, 2014 WL 4267441 (Del. Fam. Ct. Apr. 16, 2014). "When factual findings are based on determinations regarding the credibility of witnesses, the deference already required by the clearly erroneous standard of appellate review is enhanced." *CDX Holdings, Inc. v. Fox*, 141 A.3d 1037, 1041 (Del. 2016).

"overwhelming" "during the summer and fall[.]"[25]  Here, the evidence was not overwhelming.  Richardson presented only six weeks' worth of evidence.[26]

(15)  On the record before it, the court fairly determined that it could not conclude that Reed's partner "behaves like someone who lives at [Reed's] home."[27] We review only to decide whether the Family Court exceeded its discretion, meaning whether the court exceeded "the bounds of reason in view of the circumstances and has so ignored recognized rules of law or practice so as to produce injustice."[28] The Family Court did not.  The court followed the law and looked at all relevant evidence.[29]  It was also even-handed when it concluded that Reed and Richardson must pay their own fees.

---

[25] *Id.*

[26] In *Eric S.W. v. Stacey E.W.*, cohabitation was found based on surveillance that occurred during August, October, November, and December.  *Eric S. W. v. Stacey E. W.*, 1997 WL 878700, at *2 (Del. Fam. Ct. May 9, 1997).  That would be the type of longer duration evidence that the court here acknowledged would be more persuasive.  The cohabitation in *Hubbs v. Hubbs* was also found to have occurred over a period of nearly two years.  *Hubbs v. Hubbs,* 1993 WL 331916, at *4 (Del. Fam. Ct. May 4, 1993).

[27] *Paul*, 60 A.3d at 1083.  *Paul* concerned a time frame of nine months, where the instant matter concerns events primarily occurring within a span of six weeks.

[28] *State v. Wright*, 131 A.3d 310, 320 (Del. 2016) (quoting *Charbonneau v. State*, 904 A.2d 295, 304 (Del. 2006)).

[29] Family Court Order at 14.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice